**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

REBECCA M. MONTANO,
     Plaintiff,

    vs

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 1:13-cv-70
Spiegel, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's amended

statement of errors (Doc. 9), the Commissioner's response in opposition (Doc. 14), and

plaintiff's reply memorandum. (Doc. 17).

## I. Procedural Background

Plaintiff filed an application for DIB in July 2009, alleging disability since February 28,

2007, due to stenosis in the cervical and thoracic spine with arthritis and degenerative disc

disease. Plaintiff's insured status expired on September 30, 2009. Plaintiff's application was

denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted

a *de novo* hearing before administrative law judge (ALJ) Jerry Faust. Plaintiff and a vocational

expert (VE) appeared and testified at the ALJ hearing. On September 19, 2011, the ALJ issued

a decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals

Council was denied, making the decision of the ALJ the final administrative decision of the

Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the

2

sequential evaluation process. *Id.*; *Wilson* v. *Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B.   The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] last met the insured status requirements of the Social Security Act through September 30, 2009.

> 2. The [plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of February 28, 2007 through her date last insured of September 30, 2009 (20 C.F.R. 404.1571 *et seq.*).

> 3. Through the date last insured, the [plaintiff] had the following severe impairments: status post labral tear, left shoulder, with surgical intervention; cervical spondylosis with chronic pain symptoms; mild degenerative disc disease of the lumbar spine; and an anxiety disorder (20 CFR 404.1520(c)).

> 4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

> 5. After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, the [plaintiff] had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit, with normal breaks, for a total of 6 of 8 hours per day, to stand and walk, with normal breaks, for a total of 6 of 8 hours per day and to push and pull within those limitations. The [plaintiff] could not work overhead with the left upper extremity or do any repetitive pushing or pulling with the left upper extremity. The [plaintiff] could occasionally climb ramps and stairs but could never climb ladders, ropes or scaffolds. The [plaintiff] could only occasionally stoop, kneel, crouch or crawl. The [plaintiff] was limited to simple, routine tasks.

3

6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[1]

7. The [plaintiff] was born on [in] . . . 1963 and was 46 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date[ ] last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed. (20 CFR 404.1569 and 404.1569(a)).[2]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from February 28, 2007, the alleged onset date, through September 30, 2009, the date last insured (20 CFR 404.1520(g)).

(Tr. 32-42).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

478 F.3d 742, 745-46 (6th Cir. 2007).

---

[1] Plaintiff has past relevant work as a material handler. (Tr. 41, 213).

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 2,000 unskilled, light jobs in the regional economy, such as production assembler, production inspector, and hand packer. (Tr. 42, 104).

4

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

Plaintiff's amended statement of errors lists seven distinct assignments of error: (1) the ALJ erred by relying on the VE's testimony as it was inconsistent with the *Dictionary of Occupational Titles* (DOT); (2) the ALJ erred by giving "great weight" to the opinions of the state agency reviewing physicians; (3) the ALJ erred by rejecting the opinion of her treating physician; (4) the ALJ should have given greater weight to the opinion of her treating

5

chiropractor: (5) the ALJ mischaracterized or ignored record evidence establishing significant

changes to her physical condition in 2010; (6) the ALJ erred in assessing her credibility by not

considering her pain relief efforts; and (7) the ALJ improperly discounted her credibility based

on purported inconsistencies with her reported activities of daily living. (Doc. 9 at 2-11). As

errors two, three, and four relate to how the ALJ weighed the opinion evidence, they will be

addressed together. Likewise, errors six and seven will be discussed together as they involve the

ALJ's credibility finding. The Court will first address plaintiff's contention that the ALJ

improperly weighed the medical opinions of record.

1. <u>The ALJ did not err in weighing the opinion evidence of record.</u>

It is well-established that the findings and opinions of treating physicians are entitled to

substantial weight. "In general, the opinions of treating physicians are accorded greater weight

than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.

1985) ("The medical opinions and diagnoses of treating physicians are generally accorded

substantial deference, and if the opinions are uncontradicted, complete deference."). "The

treating physician doctrine is based on the assumption that a medical professional who has dealt

with a claimant and his maladies over a long period of time will have a deeper insight into the

medical condition of the claimant than will a person who has examined a claimant but once, or

who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th

Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met:

(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic

6

techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p).

Plaintiff asserts the ALJ erred by weighing the opinions of record in the following ways.

7

First, the ALJ improperly characterized the opinion of Ron Zile, M.D., plaintiff's treating

physician, as an opinion of an Ohio Job and Family Services doctor.  (*Id.* at 6).  Plaintiff also

argues the ALJ erred by not adhering to the "treating physician rule" in weighing Dr. Zile's

opinion and by not re-contacting Dr. Zile as required under 20 C.F.R. § 404.1512(e).  (*Id.* at

7-8).  Second, plaintiff argues the ALJ improperly discounted the opinion of her treating

chiropractor, Jeffery Todd Reed, D.C., given the consistency of his opinion with Dr. Zile's.  (*Id.*

at 9).  Third, plaintiff contends the ALJ should have given less weight to the opinions of the

non-examining state agency doctors, Maria Congbalay, M.D., and Leigh Thomas, M.D., as their

opinions were based on an incomplete review of the record.  (Doc. 9 at 5-6).  For the following

reasons, plaintiff's arguments are not well-taken as substantial evidence supports the ALJ's

weighing of the medical opinions.

a. *Plaintiff's Treating Physician: Dr. Zile*

The record includes treatment notes from Dr. Zile from March 2007 to August 2009 (Tr.

456-613).  On May 23, 2008, Dr. Zile wrote on a prescription pad that plaintiff was unable to

work at that time due to her shoulder pain.  (Tr. 538).  On August 6, 2009, Dr. Zile reported that

he treated plaintiff for neck pain with neuropathy; left shoulder pain status post-surgery, in

therapy; and low back pain and leg pain.  (Tr. 480-81, 614-15).  Dr. Zile reported plaintiff's

health status as "deteriorating" and plaintiff's left hand and left leg were weaker than the right;

she had decreased range of motion of her neck and her left shoulder; and she had low back pain

upon palpation.  (*Id.*).  Dr. Zile opined that plaintiff could stand and walk less than one hour in

an eight hour workday, less than one hour without interruption; could sit three hours in an eight

hour work day, less than one hour without interruption; was not capable of lifting or carrying any

weight; and was extremely limited in her ability to push, pull, bend, and reach. (Tr. 481, 615).

Dr. Zile concluded that plaintiff's physical limitations would be expected to last 12 months or more. (*Id.*).

The ALJ gave "little weight" to Dr. Zile's May 2008 opinion that plaintiff was disabled due to shoulder pain because "the ultimate issue of whether an individual is disabled is reserved to the Commissioner"; the opinion was inconsistent with the treatment records; and the opinion did not state that plaintiff would be unable to work for a period of 12 continuous months. (Tr. 40).

The ALJ's decision is substantially supported by the record. The ALJ is not required to accept Dr. Zile's opinion that plaintiff is unable to engage in employment due to shoulder pain. (Tr. 538). Whether a person is disabled within the meaning of the Social Security Act, *i.e.*, unable to engage in substantial gainful activity, is an issue reserved to the Commissioner and a physician's opinion that his patient is disabled is not "giv[en] any special significance." 20 C.F.R. § 404.1527(d). *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2008) (treating physicians' opinions on issues reserved to Commissioner are never entitled to controlling weight or special significance); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted). Accordingly, the ALJ reasonably determined to give "little weight" to Dr. Zile's opinion that plaintiff is unable to work.[3]

---

[3]As plaintiff does not challenge the ALJ's decision to give "little weight" to Dr. Zile's May 23, 2008 opinion, the Court declines to engage in any further analysis regarding whether the ALJ's finding is otherwise supported by substantial evidence.

The ALJ gave "very little weight" to Dr. Zile's August 6, 2009 opinion because it was "'mostly' based on [plaintiff]'s own statements." (Tr. 40, citing Tr. 481-82, 614-15). The ALJ mistakenly identified the source of this opinion as "doctors from Ohio Job and Family Services" and did not recognize that it was completed by Dr. Zile on a form used by Ohio Job and Family Services. (Tr. 40). Plaintiff maintains that the ALJ's failure to recognize that this is an opinion from her treating physician constitutes reversible error. (Doc. 9 at 6). Plaintiff further asserts that the ALJ's determination that the opinion was based on plaintiff's subjective statements is erroneous given Dr. Zile's reported examination findings of decreased range of motion in her back, neck, and left shoulder, left side weakness, and low back pain on palpation. (Doc. 9 at 7, citing Tr. 480, 614). Last, plaintiff contends the ALJ erred under 20 C.F.R. § 404.1512(e) by failing to re-contact Dr. Zile for clarification. (Doc. 9 at 8). Plaintiff's arguments are not well-taken.

While the ALJ misstated the source of the August 2009 opinion and failed to recognize Dr. Zile as its author, any error is harmless as the ALJ's decision to give it "very little weight" is nevertheless substantially supported in light of the opinion's lack of support and inconsistency with the objective findings. When asked to provide the "observations and/or medical evidence" supporting his findings that plaintiff is extremely limited in her sitting, standing, lifting, pushing, pulling, bending, and reaching abilities, Dr. Zile reported that his limitations were "mostly Hx from Pt and info on chart." (Tr. 481, 615). In light of Dr. Zile's representation that his opinion was based primarily on plaintiff's subjective reports, the ALJ was not required to give it further weight. *See* 20 C.F.R. §§ 404.1508 (impairment must be established by medical evidence consisting of signs, symptoms and laboratory findings, and not solely by claimant's statement of

10

symptoms); 404.1528(a) (claimant's own description of impairment is not enough to establish existence of that impairment). *See also Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.") (internal citations and quotations omitted).

Further, the ALJ's determination that Dr. Zile's limitations were inconsistent with other record evidence is substantially supported. For example, while Dr. Zile opined that plaintiff could lift no weight whatsoever (Tr. 481, 615), plaintiff herself testified that she was capable of lifting up to 20 pounds. (Tr. 95-96). Further, Dr. Zile's opinion that plaintiff is limited to standing or walking for less than one hour at a time and is extremely limited in her ability to push, pull, bend, and reach is inconsistent with examination findings of full muscle strength (Tr. 335, 337, 342, 359, 369, 427, 429, 443, 671-74, 716-18); good range of motion in her neck, back, and left shoulder (Tr. 270, 478, 693, 694, 695, 702, 719); and normal gait. (Tr. 671-74, 768-79, 859). Given the multiple examination findings contradicting Dr. Zile's findings of extreme limitations, the ALJ's decision to give his opinion "very little weight" for inconsistency with the record as a whole is substantially supported.

Plaintiff's remaining argument - that the ALJ erred under 20 C.F.R. § 404.1512(e) by not seeking clarification from Dr. Zile - is not well-taken.[4] Former regulation § 404.1512(e) provided that the Commissioner will recontact a medical source "[w]hen the evidence we receive from your treating physician or psychologist or other medical source is *inadequate for us to*

---

[4]Title 20 C.F.R. § 404.1512 was amended effective March 26, 2012. The provisions governing how the Commissioner is to consider evidence was previously found at § 404.1512(e) and is now found at § 404.1520b(c). However, plaintiff's claim is governed by the pre-amended regulation as it was in effect at the time of the ALJ decision.

11

*determine whether you are disabled. . . .*"  20 C.F.R. § 404.1512(e) (emphasis added).

Accordingly, the duty to recontact "a treating medical source is limited to cases in which the

existing medical evidence is inadequate to make a disability decision." *Daniels v. Astrue*, No.

09-21, 2010 WL 599634, at *2 (E.D. Ky. Feb. 17, 2010).

 Here, the ALJ's decision to give "little weight" and "very little weight" to Dr. Zile's

opinions was based on the ALJ's determination that they were not well-supported and

inconsistent with the record as a whole.   Absent an inability to make a disability determination

based on the inadequacy or incompleteness of Dr. Zile's opinions, the ALJ was under no duty to

recontact Dr. Zile to seek further clarification.   *See DeBoard v. Comm'r of Soc. Sec.*, 211 F.

App'x. 411, 416 (6th Cir. 2006) ("a disagreement between two medical professionals does not

render the opinion of one 'inadequate' under the regulations"); *Thomas v. Barnhart*, 278 F.3d

947, 958 (9th Cir. 2002) (absent a finding that the evidence from the treating source is inadequate

to make a disability determination, disagreement with or discrediting of a treating physician's

report is insufficient to trigger the obligation to recontact).   Here, the ALJ's determination that

Dr. Zile's opinions were inconsistent and not supported by the record as a whole did not trigger a

duty to recontact Dr. Zile under the regulations.

 For the above reasons, the ALJ's decision to discount the opinions of plaintiff's treating

physician, Dr. Zile, is supported by substantial evidence.

 b. *Plaintiff's Treating Chiropractor: Dr. Reed*

 Plaintiff treated with chiropractor, Jeffrey Reed, D.C., beginning in April 2007.   Dr.

Reed treated plaintiff for radiculitis, cervical strain/sprain, and thoracic outlet syndrome.

According to Dr. Reed, plaintiff's symptoms include neck, low and mid back pain; fibromyalgia:

muscle fatigue; anxiety; shoulder pain; and a history of shoulder surgery.   On September 28,

2010, Dr. Reed opined that plaintiff can sit for 30 minutes at one time and stand for 20 minutes at

one time, and she will need periods of walking around during an eight-hour work day.   Dr. Reed

also opined that plaintiff can only lift less than 10 pounds.   (Tr. 710-14).

 The ALJ gave "very little weight" to Dr. Reed's opinion because, as a chiropractor, Dr.

Reed is not an acceptable medical source and, further, his opinion was inconsistent with the

objective medical record, the findings of acceptable medical sources, and plaintiff's own

statements regarding her limitations.   (Tr. 40).   Plaintiff asserts the ALJ erred by discounting

Dr. Reed's opinion as it is consistent with Dr. Zile's opinions.   The undersigned finds that the

ALJ's decision to give "very little weight" to Dr. Reed's opinion is supported by substantial

evidence.

 Notably, the ALJ was not required to give any special weight to Dr. Reed's opinion

because chiropractors are not acceptable medical sources qualified to assess the severity of

plaintiff's impairments and functioning.   *Compare* 20 C.F.R. § 404.1513(a) (acceptable medical

sources include licensed physicians, licensed or certified psychologists, licensed optometrists,

licensed podiatrists and qualified speech-language pathologists) *with* 20 C.F.R. § 404.1513(d)(1)

(medical sources not listed in § 404.1513(a), such as nurse practitioners, physicians' assistants,

naturopaths, chiropractors, audiologists and therapists are considered to be "other sources" rather

than "acceptable medical sources").   *See also Walters*, 127 F.3d at 530 (ALJs have discretion in

determining how much weight to give chiropractor opinions based on the record as a whole as

chiropractors are not medical sources).   Here, the ALJ exercised his discretion in determining

that the restrictions found by Dr. Reed were inconsistent with the record as a whole and thus gave

his opinion "very little weight."  The ALJ's determination is substantially supported by the

record evidence discussed such as examination findings of full strength, good range of motion,

and normal gait, and plaintiff's testimony regarding her lifting capabilities.  Accordingly, the

ALJ did not err in opting to discount the opinion of Dr. Reed.

     c. *The State Agency Physicians: Dr. Congbalay and Dr. Thomas*

     Dr. Congbalay reviewed the file on January 2, 2010, and completed a physical residual

functional capacity (RFC) assessment.  (Tr. 642-49).  Dr. Congbalay based her opinion on

plaintiff's allegations; examination findings from 2007 and 2008; February and December 2008

MRIs demonstrating multiple disc bulges and foraminal stenosis; and a normal April 2009

electromyocardiogram (EMG).  (Tr. 643).  She opined that plaintiff could lift and/or carry and

push and/or pull up to 20 pounds occasionally and 10 pounds frequently; could stand and/or walk

about six hours in an eight-hour workday; and could sit for about six hours in an eight-hour

workday.  (Tr. 643).  Dr. Congbalay also opined that plaintiff could never climb ladders, ropes

or scaffolds and could occasionally stoop, crouch and crawl.  (Tr. 644).  Plaintiff was also

found to be limited in left upper extremity overhead reaching.  (Tr. 645).  Dr. Congbalay

deemed plaintiff's allegations that she is limited to sitting and standing for one hour at a time and

can lift no more than 10 pounds to be partially credible as there was no medical evidence of

record supporting the severity of her reported lifting limitation or difficulties with sitting or

standing.  (Tr. 647).  Dr. Thomas, another state agency reviewer, affirmed Dr. Congbalay's

assessment on June 8, 2010.  (Tr. 705).

     The ALJ gave "great weight" to Dr. Congbalay's and Dr. Thomas' opinions finding them

to be "highly consistent with the evidence as a whole. . . ."  (Tr. 40).  Plaintiff maintains the

ALJ erred on this because both physicians rendered their opinions without reviewing the full record. Dr. Congbalay's January 9, 2010 opinion was generated without reviewing later generated evidence from, *inter alia*, physical therapy treatment notes (Tr. 671-77, 693); treatment notes from specialists, including neurologists Angela Rackley, M.D., and Michael E. Jones, D.O. (Tr. 682-83, 708-09, 716-18, 721-22); chiropractic treatment notes and opinion evidence (Tr. 691-92, 710-14, 829-35); treatment notes from plaintiff's pain clinic (Tr. 728-39); and other physical examination and objective findings. (Tr. 719, 724-25, 768-82, 792-828, 838-62).[5] Dr. Thomas likewise did not review this evidence except for physical therapy progress notes from April 2010. *See* Tr. 705. For the following reasons, the Court finds that the ALJ reasonably determined to give "great weight" to the opinions of Drs. Congbalay and Thomas despite the limited nature of their record review.

First, the evidence not reviewed by the state agency physicians was generated after plaintiff's DIB-insured status expired. Plaintiff has the burden of bringing forth sufficient evidence establishing her disability claim. *Foster v. Halter*, 279 F.2d 348, 353 (6th Cir. 2001). Though plaintiff was not required to prove she was disabled for a full twelve months prior to the expiration of her insured status, she was required to prove "the onset of the disability" prior to the expiration of her insured status and that such diability lasted for a continuous period of twelve months. *See Gibson v. Sec'y of Soc. Sec.*, 678 F.2d 653, 654 (6th Cir. 1982); 42 U.S.C. § 423(d)(1)(A). Plaintiff filed her application for DIB on July 24, 2009, alleging a disability onset date of February 28, 2007. (Tr. 183-84). Plaintiff's DIB-insured status expired on September

---

[5]Though plaintiff cites to all later generated evidence in support of her argument, including records pertaining to plaintiff's mental health treatment and Dr. Thomas' opinion, the Court limits its discussion to that evidence which is relevant to the weight given to Dr. Congbalay's opinion, *i.e.*, that which includes findings related to plaintiff's physical functional abilities. The above-listed evidence comprises the whole universe of relevant

15

30, 2009.  (Tr. 32).  Thus, plaintiff was required to prove that she was disabled during the period from February 28, 2007 to September 30, 2009, to qualify for DIB.

The evidence not reviewed by the state agency physicians was all generated after September 30, 2009, plaintiff's date last insured.  Post-insured evidence may only be considered if it sheds light on a claimaint's condition during the insured period.  *Paquette v. Sullivan*, 902 F.2d 1569, 1990 WL 66814, at *2 (6th Cir. May 21, 1990) (citing *Johnson v. Sec'y of H.E.W.*, 679 F.2d 605 (6th Cir. 1982)).  Here, the ALJ reasonably determined that the later-generated evidence did not establish that plaintiff met the requirements for disability at any time prior to September 30, 2009.  *See* Tr. 38-40.  The ALJ's decision to give the opinions of Drs. Congbalay and Thomas "great weight" despite their not having reviewed this evidence is therefore appropriate.

The Court also notes that plaintiff's cursory assignment of error (Doc. 9 at 5-6) fails to explain the relevance of any of the later-generated evidence or cite to any record evidence which demonstrates the existence of physical limitations not already accommodated by the ALJ's residual functional capacity (RFC) formulation.  Moreover, plaintiff has failed to cite to any authority, nor is the Court aware of any, which requires an ALJ to give less weight to an otherwise well-supported non-examining medical source opinion where the source does not review medical evidence generated after the date last insured.  While it is incumbent upon the ALJ to review later-generated evidence which relates back to plaintiff's condition prior to the expiration of her insured status, there is nothing which requires him to reject medical opinions that do not consider such evidence.  *See White v. Sec'y of H.H.S.*, No. 90-5642, 1990 WL

---

evidence not considered by Dr. Congbalay.

16

193049, at *2 (6th Cir. 1990) (citing *Parson v. Heckler*, 739 F.2d 1334, 1340 (8th Cir. 1984);

*King v. Sec'y of H.H.S.*, 896 F.2d 204, 205-06 (6th Cir. 1990)). *Cf. Fisk v. Astrue*, 235 F. App'x

580, 585 (6th Cir. 2007) (finding that the ALJ erred by giving greater weight to a reviewing

physician opinion where the treating physician's opinion was later in time and based upon

substantial evidence from several specialists' examinations of plaintiff which reviewing

physician did not review). Given the ALJ's in-depth consideration of the record as a whole, the

undersigned finds that he did not err in relying upon the reviewing physicians' opinions despite

their incomplete reviews.

Second, the ALJ's decision to give "great weight" to the state agency physicians'

opinions is substantially supported as they are consistent with the record evidence pre-dating

plaintiff's date last insured. The physicians' determination that plaintiff is capable of lifting 20

pounds occasionally and 10 pounds frequently is supported by physical examination findings and

plaintiff's own testimony. *See, e.g.*, Tr. 95-96 (plaintiff testified at the ALJ hearing that from

the date she last worked to her date last insured she was capable of lifting up to 20 pounds, but

not all day long); Tr. 335, 337, 342 (plaintiff exhibited 5/5 muscle strength in all extremities

during November and December 2007 examinations); Tr. 359, 363 (plaintiff had equal and "good

strength" and full range of motion in her extremities in October 2008 with no limitation in

movement); Tr. 427, 429 (in February and March 2009, plaintiff had 5/5 motor strength on

examination); Tr. 443 (Dr. Rackley observed in March 2008 that plaintiff remained with "normal

sensation and strength despite feelings of muscle pain."). Likewise, Dr. Congbalay and Dr.

Thomas' opinions that plaintiff retains the functional capacity to sit, stand, and/or walk for six

hours in an eight-hour workday is consistent with the above findings of full lower extremity

17

muscle strength as well as consistent record findings of a normal, steady gait and negative

straight leg raising.   *See* Tr. 270, 287, 363-64, 429, 494, 509 (examination findings from

October and December 2008 and February and October 2009).

While the objective evidence of record establishes that plaintiff has disc bulges at L5-S1,

L4-L5, and L3-L4 and mild left foraminal stenosis at C3-C4 (Tr. 319-20, February 2008 MRIs of

cervical and lumbar spine), no significant spinal canal or foraminal stenosis was observed.

Likewise, though there is objective evidence establishing an acute left shoulder impairment (Tr.

417, a May 2008 MRI of the left shoulder revealed mild tendinopathy of the suprapinatus and

infraspinatus tendons and mild degenerative changes of the acromion clavicular joint; Tr. 307, an

October 2008 MRI of the left shoulder revealed a posterior labrum consistent with a labral tear),

examination findings consistently demonstrate that plaintiff retained full range of motion and

strength and her medical providers remarked that the shoulder looked good and was healing well

following surgery.   *See* Tr. 478 (Brian Cohen, M.D., reported to Dr. Zile in a September 1, 2009

letter that although plaintiff was having some issues with her trapezial muscles, he was "very

happy with the way her shoulder has progressed in terms of the motion and the strength."); Tr.

623 (Jesse McCarron, M.D., examined plaintiff on October 15, 2009, and reported that the

surgical repair achieved was excellent and opined that her stiffness would improve with diligent

stretching); Tr. 694 (though plaintiff reported pain in her shoulders, neck, and back, physical

examination from November 2009 revealed full motor strength in all extremities and her neck

range of motion was within normal limits); Tr. 695 (plaintiff's shoulder range of motion was

"quite good" in October 2009 but she complained of neck tightness and rated her pain as 2 to 3

out of 10).   Despite the objective evidence supporting plaintiff's reports of pain, the examination

findings noted above showing full muscle strength and range of motion support the ALJ's reliance on Dr. Congbalay and Dr. Thomas' opinions that plaintiff is capable of performing a limited range of light work. The ALJ's decision is further supported by evidence that plaintiff retains significant flexibility despite her complaints of back pain. *See*, *e.g.*, Tr. 270 (at an October 2008 examination, plaintiff could "easily forward flex and touch her fingers to the floor and extend 20 degrees"); Tr. 702 (in January 2009, plaintiff exhibited only mild discomfort with cervical range of motion and some mild tenderness with palpation in the back).

Moreover, the medical evidence generated after plaintiff's date last insured is similarly consistent with Drs. Congbalay and Thomas' opinions that plaintiff retains the capacity to engage in a limited range of light work. March and April 2010 physical therapy notes include findings of a normal gait and increase in plaintiff's left arm range of motion. (Tr. 671-74). A follow up letter from Karen Evans, M.D., includes her opinion that plaintiff has a "painless range of motion of the left shoulder." (Tr. 693). Examination findings from August 2010 include full left grip strength; normal righter upper and lower extremity strength with some give away weakness on the left; and superior muscle development of both upper and lower extremities. (Tr. 716-18). Further, an EMG study of plaintiff's left side was largely normal.[6] Treatment records from the Ohio Pain Clinic from June through September 2010 include examination findings of normal flexibility in the neck and cervical spine; some trigger points in the paraspinal cervical muscles; and decreased range of motion and tenderness on the left shoulder, as well as the doctor's opinion that plaintiff required only conservative care. (Tr. 728-39). The remaining later-generated records consists of physical examination and objective findings as follows: on

_____

[6]The EMG evidence is discussed further *infra*.

May 21, 2010, plaintiff had a good range of motion in her cervical spine and a satisfactory range

of motion in her lumbar spine and radiographs revealed mild spondiolytic changes in the cervical

spine (Tr. 719); at a September 2010 examination, plaintiff's had 5/5 strength in her left rotator

cuff, largely normal range of motion in her left shoulder with some evidence of scapular winging

which appeared to correct with resisted maneuvers; and some crepitus, but full extremity strength

and normal reflexes and normal gait (Tr. 768-79); a November 4, 2010 EMG study of plaintiff's

left arm was normal (Tr. 792); an October 2010 MRI of plaintiff's left shoulder revealed partial

thickness undersurface tear of the supraspinatus tendon; tear of the superior labram; and status

post acromiplasty (Tr. 797); an October 2010 MRI of plaintiff's back revealed "fairly mild

multi-level degenerative disk disease" and "no significant central spinal canal stenosis or focal

disk herniation" (Tr. 803); July and May 2011 examination findings include 5/5 motor strength,

guarded movement of the neck, and normal sensation to touch, and well-balanced and

coordinated gait.  (Tr. 847, 859).   This evidence is largely consistent with that reviewed by Drs.

Congbalay and Thomas and does not reflect that plaintiff had any physical limitations either

before or after her date last insured beyond those accounted for in the doctors' opinions and the

ALJ's RFC finding.

 In consideration of the above, the ALJ's decision to give "great weight" to the opinions of

the state agency reviewing physicians is supported by substantial evidence.

 2. <u>The ALJ did not mischaracterize the record regarding plaintiff's physical condition in
2010.</u>

 In his discussion of the medical evidence generated after plaintiff's date last insured, the

ALJ stated that: "[i]n 2010, the record continues to show that [plaintiff] did not suffer from any

significant changes to her physical condition."  (Tr. 38).  The ALJ then summarized portions of

20

the medical evidence from 2010, including a treatment note from Dr. Rackley containing

plaintiff's report in March 2010 that a recent EMG was unremarkable.   (Tr. 38, citing Tr. 682).

Plaintiff contends that the ALJ erred in his characterization of this evidence because he failed to

address a later EMG study from August 23, 2010, that revealed left ulnar mononeuropathy of the

left elbow; severe left C3 and or C4 radiculopathy; and chronic left long thoracic nerve injury.

(Doc. 9 at 9-10, citing Tr. 708-09, 715).   Plaintiff's argument is not well-taken.

The "ALJ need not discuss every piece of evidence in the record for his decision to

stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 665 (6th Cir. 2004).   The question is

whether the decision is substantially supported by the whole of the record evidence. *Perales*,

402 U.S. at 401.   The evidence of record substantially supports the ALJ's finding that plaintiff's

condition did not significantly change in 2010.

As discussed above, in 2010, plaintiff continued to demonstrate full strength in all

extremities; good range of motion in her back, neck, and left shoulder; and a normal gait. *See*,

*e.g.*, Tr. 671-74, 693, 716-18, 719, 769-79.   Further, despite the abnormal August 2010 EMG

findings, there is no evidence that these findings are inconsistent with plaintiff's history of

"mechanical pain-related complaints including neck pain and left shoulder pain" such that they

reflect a significant change in her physical condition.   (Tr. 715).   More importantly, this

objective evidence says nothing about plaintiff's functional limitations and examination findings

from four days earlier showing that plaintiff had some give-way weakness in her left arm but full

left grip strength (Tr. 717), which is consistent with the prior examination findings as well as the

ALJ's RFC restricting plaintiff's overhead reaching and lifting.   As there is no medical opinion

in the record providing any limitations not included in the ALJ's RFC formulation due to the

21

EMG evidence cited by plaintiff, it was not necessary for the ALJ to discuss this evidence for his decision to stand.

3. The ALJ's credibility determination is supported by substantial evidence.

Plaintiff contends the ALJ's determination that she is less than fully credible is erroneous because: (1) the ALJ failed to consider her persistent efforts to obtain pain relief, which bolster her credibility, and (2) the ALJ improperly determined that her activities of daily living were inconsistent with her subjective reports. (Doc. 9 at 10-11). In support of her first argument, plaintiff merely lists the sources from which she received treatment for her left shoulder, neck, and back impairments. (Doc. 9 at 11). Plaintiff's second argument is limited to one paragraph wherein she asserts that her reported activities of daily living, such as knitting, walking, cleaning, and running errands, do not undercut her credibility as to her reports of disabling pain nor do they demonstrate that she is capable of full-time work. (*Id.*).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers,* 486 F.3d at 247. Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

Insofar as plaintiff maintains the ALJ erred by not considering her persistent efforts to obtain pain relief, this is contradicted by a plain reading of the ALJ's decision. Not only did the ALJ discuss nearly all of the treatment evidence cited by plaintiff,[7] he also acknowledged a number of the methods employed by plaintiff to relieve her pain, such as receiving epidural and trigger point injections, laying down, taking muscle relaxers, using a TENS unit, and engaging in physical therapy. (Tr. 35, 38). Moreover, the record does not establish that plaintiff engaged in "[p]ersistent attempts . . . to obtain relief of [her] pain" such that her allegations of pain are well-supported. Social Security Ruling 96-7p.[8] As noted by the ALJ, several doctors have

---

[7]*See, e.g.,* Tr. 33 (citing evidence from Dr. Zile); Tr. 36 (citing evidence from Dr. Zile, Clinton Memorial Hospital, Clinton Neurological Services, Green Chiropractice Center, and the Cincinnati Spine Institute); Tr. 37 (citing evidence from Christ Hospital, Dr. Rackley, and the Cleveland Clinic); Tr. 38 (citing evidence from Highland District Hospital and the Ohio Pain Clinic); Tr. 39 (citing evidence from the Cleveland Clinic, the Adena Bone and Joint Center, and OSU Sports Medicine).

[8]"Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." 20 C.F.R. § 402.35(b)(1). In *Wilson,* 378 F.3d at 549, the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but *assumed* that they are. [The Court] makes the same assumption in this case." *Ferguson v. Comm'r of Soc. Sec.,* 628 F.3d 269, 272 n.1 (6th Cir. 2010) (emphasis in original).

reported plaintiff's refusal to cooperate with advised treatment recommendations. *See* Tr. 37, citing Tr. 461 (Dr. Zile reported in December 2008 that plaintiff was "very challenging. I want to help her, but if she is not going to take any medication and refuses to take antidepressants, which I think would help her in a number of ways (sic). I think this would help her depression and also help her anxiety associated with this and also help with some of the pain management issues. I think she would benefit from this. Apparently, I am not the first person who has told her this, but she is quite resistant to this idea. . . . In fact, she insists on not taking any other medications other than the Valium."); Tr. 38, citing Tr. 731 (Amol Soin, M.D., plaintiff's pain treatment specialist, reported in June 2010 that plaintiff declined epidural and trigger point injections, a TENS unit, physical therapy, and pain medication). Given the thorough discussion of the evidence of plaintiff's attempts to treat her pain and her documented refusals of recommended treatment, the undersigned finds that the ALJ complied with the requirements of SSR 96-7p and reasonably determined that plaintiff's allegations of disabling pain and limitations were not fully credible.

Plaintiff also contends the ALJ erred in assessing her credibility by finding that her activities of daily living were inconsistent with her alleged pain and limitations. The ALJ recounted some of the activities of daily living that plaintiff reported to the consultative examining psychologist, Michael W. Firmin, Ph.D., in January 2010. (Tr. 38-39, citing Tr. 652-53). Plaintiff reported her typical daily activities as follows:

> Get up, take medications as needed, eat breakfast (fruit), drink coffee, text her daughter, call her mother, check her bill and see what needs to be paid, do yoga, listen to the birds and watch them at the feeder, read books, pray, make the beds, tidy up the house, eat lunch (salad), make phone calls, take pictures, get on the computer and play with photo pictures, sew, knit, paint, take walks if she can get out, run errands sometimes, eat dinner (spaghetti), watch movies, get on the computer, do some more yoga, read, knit, talk on the phone with her sister, clean

24

up the kitchen, clean the house (dust, clean sinks and mirrors), do laundry, take medications when needed, and go to bed around 10:00 P.M.

* * * * *

Recreational activities include interacting or playing with children and listening to music, and interests include engaging in conversations, using the computer, doing hobbies, reading, and making crafts. [Plaintiff] needs assistance with cooking, washing dishes, loading the dishwasher, cleaning the house, vacuuming, doing laundry, and mowing the lawn, and she has another person drive her where she needs to go.

(Tr. 652-53). Contrary to plaintiff's argument, the ALJ may consider plaintiff's activities of daily living in assessing her credibility. *See Walters*, 127 F.3d at 532 (household activities such as doing chores and running errands are properly considered by the ALJ in assessing allegations of pain). Here, the wide array of physical activities plaintiff reportedly engages in on a daily basis substantially supports the ALJ's finding that her allegations of disabling pain and functional limitations are not fully credible. The undersigned thus finds that the ALJ did not err in assessing plaintiff's credibility by considering, *inter alia*, her reported activities of daily living.[9]

4. The ALJ did not err at Step Five of the sequential analysis.

Plaintiff argues that the ALJ did not meet his burden at Step Five of the sequential analysis because he relied on the VE's testimony in finding that there were jobs existing in the national economy that plaintiff was capable of performing, but the VE's testimony was inconsistent with the DOT. The VE testified that a person with the RFC for light unskilled work

_____

[9]The Court notes that the ALJ provided numerous other reasons for discounting plaintiff's credibility which are substantially supported by the record. *See, e.g.*, Tr. 36, citing Tr. 268 (the ALJ noted that in May 2008, a radiologist was unable to explain plaintiff's alleged symptoms given that the only objective finding was C3-4, left-sided foraminal stenosis); Tr. 36, citing Tr. 507 (the ALJ noted that plaintiff traveled to Puerto Rico in April 2008 and that international travel was not consistent with her reported levels of pain and limited physical abilities); Tr. 38, citing Tr. 226, 729 (while plaintiff denied tremors during a June 2010 examination, she reported experiencing tremors in a July 2010 Disability Report).

and capable of performing "simple, routine tasks" as formulated by the ALJ, could perform light, unskilled work such as a production assembler (DOT number 706.687-010), production inspector (DOT number 652.687-034), or hand packer (DOT number 920.687-082). (Tr. 104). Plaintiff contends that these jobs require "level 2" reasoning which requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." Plaintiff asserts the ALJ's hypothetical question described a person who was "limited to simple, routine tasks" (Tr. 104), which limits plaintiff to work with DOT "level 1" reasoning skills requiring the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions." Plaintiff argues the ALJ erred at Step Five as the jobs identified by the VE are inconsistent with the DOT's description of such jobs. (Doc. 9 at 2-4, citing Dictionary of Occupational Titles, Appendix C, 4th Ed., rev. 1991 (available at http://www.occupationalinfo .org/appendxc_1.html) (last visited February 7, 2014). The Court disagrees.

First, Social Security Ruling 00-4p provides that unskilled work corresponds to work with reasoning levels one and two. SSR 00-4p, 2000 WL 1898704, at *3 (2000). Thus, there is no apparent contradiction between the VE's testimony and the DOT's description and, accordingly, no basis for finding error in the ALJ's Step Five analysis.

Second, the "DOT lists *maximum* requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4p, 2000 WL 1898704, at *3 (emphasis added). In other words, the reasoning levels listed in the DOT reflect the maximum requirements for the jobs listed by the VE, and not the range of specific requirements an individual must satisfy to perform the jobs. *See, e.g., Hall v. Chater*,

109 F.3d 1255, 1259 (5th Cir. 1997) (not every job identified by a VE will actually "have requirements identical to or as rigorous as those listed in the D.O.T."). *See also French v. Astrue*, No. 2:08-cv-15, 2009 WL 151525, at *8 (E.D. Ky. Jan. 20, 2009) ("the DOT defaults to the highest physical demand level required by the job"). Social Security Ruling 00-4p recognizes that a VE "may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p, 2000 WL 1898704, at *3. Thus, the ALJ could reasonably rely on the VE's testimony that plaintiff could perform light, unskilled production assembler, production inspector, and hand packer jobs to satisfy his burden at Step Five of the sequential evaluation process despite the DOT's listing of reasoning level two for such jobs.

Third, even if the Court were to find an apparent conflict between the VE's testimony and the DOT, the ALJ met his burden of inquiry under SSR 00-4p. The ALJ has a duty under Social Security Ruling 00-4p to develop the record and ensure there is consistency between the VE's testimony and the DOT and "inquire on the record, as to whether or not there is such consistency." *Id*. at *2. Where the ALJ questions the VE and the VE testifies that there is no conflict with the DOT, the Sixth Circuit has held that the ALJ is under no further obligation to interrogate the VE, especially where the plaintiff is afforded a full opportunity to cross-examine the VE. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009). The ALJ is only required to develop the record further where the conflict between the DOT and the VE's testimony is apparent. *Id*.; *see also* SSR 00-4p, 2000 WL 1898704, at *4 ("*If* the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.") (emphasis added).

In this case, the ALJ asked the VE if his testimony was consistent with the DOT and the

27

VE responded in the affirmative.  (Tr. 106).  After the VE responded, the ALJ turned the

questioning over to plaintiff's counsel.  (*Id.*).  Plaintiff's counsel did not question the VE about

any apparent inconsistencies between her testimony and the DOT, nor did counsel bring any

potential conflicts to the ALJ's attention after the hearing.  Counsel was afforded a full

opportunity to cross-examine the vocational expert and the ALJ had no affirmative duty under

SSR 00-4p to conduct his own interrogation of the VE to determine the accuracy of the

vocational testimony.  *See Lindsley*, 560 F.3d at 606 (citing *Martin v. Commissioner of Social

Security*, 170 F. App'x 369, 374 (6th Cir. 2006) ("Nothing in S.S.R. 00-4p places an affirmative

duty on the ALJ to conduct an independent investigation into the testimony of witnesses to

determine if they are correct.")).  Because the ALJ specifically asked the VE if his testimony

was consistent with the DOT and the uncontradicted testimony of the VE indicated that no

conflict existed, the ALJ did not err by relying on such testimony in finding other jobs plaintiff

could perform.  *Id.*

Plaintiff further asserts the ALJ erred by relying on the DOT rather than consulting a

more updated publication.  (Doc. 9 at 4-5, citing *Cunningham v. Commissioner*, 360 F. App'x

606, 615-16 (6th Cir. 2010)).  Plaintiff contends the VE's testimony that plaintiff could perform

unskilled jobs as a production assembler, production inspector, or hand packer is inaccurate

because it was based on the purportedly outdated DOT.  Plaintiff asserts that more current

vocational information - the Occupational Information Network (O*NET) – reflects that the jobs

identified by the VE require skill levels exceeding those permitted for unskilled work.  *See* SSR

00-4p, 2000 WL 1898704, at *3 (unskilled work corresponds to a specific vocational preparation

(SVP) of 1-2).

28

The ALJ's decision in this regard is substantially supported. Plaintiff has not shown that the production assembler, production inspector, or hand packer job descriptions in the DOT are obsolete so as to render the VE's testimony on this matter unreliable. *Cf. Cunningham*, 360 F. App'x at 615 ("While the Social Security Commissioner does take administrative notice of [the DOT] when determining if jobs exist in the national economy, 20 C.F.R. § 404.1566(d)(1), common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted."). Although the Sixth Circuit in *Cunningham* "suggested that the particular DOT job descriptions at issue . . . may have been obsolete, it did not hold that the DOT is an unreliable or out-of-date source." *Horsley v. Comm'r of Soc. Sec.*, No. 1:11-cv-703, 2013 WL 980315, at *3 (S.D. Ohio March 13, 2013) (Barrett, J.) (quoting *Earls v. Comm'r of Soc. Sec.,* 1:09-cv-01465, 2011 WL 3652435, at *7 (N.D. Ohio Aug. 19, 2011)). As explained by the Court in *Horsley*:

> [T]he Occupational Information Network ("O*NET") . . . superseded the DOT as the federal government's primary source of occupational information in 1999. Although considered obsolete by most other federal agencies, the DOT continues to be used extensively by the Social Security Administration, although plans to replace the DOT as the Administration's primary vocational reference source are underway. *See* 73 Fed. Reg. 78864 (Dec. 23, 2008). In the meantime, however, SSR 00-4p continues to require consistency between vocational expert testimony and the DOT.

*Horsley,* 2013 WL 980315, at *3 (quoting *Ricard v. Astrue*, 1:09-08, 2009 WL 5031317, at *9 (M.D. Tenn. Dec. 14, 2009)).

As stated above, the ALJ here complied with SSR 00-4p when he asked the VE whether his testimony was consistent with the DOT and plaintiff's counsel was given the opportunity to cross-examine the VE and did not challenge this testimony. The ALJ was permitted to rely on the VE's testimony "given the VE's ability to tailor her finding to an 'individual's particular

29

residual functional capacity.'" *Beinlich v. Comm'r of Soc. Sec.,* 345 F. App'x 163, 168 (6th Cir. 2009) (quoting *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003), and citing SSR 00-4p). Accordingly, the undersigned finds that the ALJ did not err at Step Five of the sequential analysis and that his finding that there are jobs in the national economy plaintiff is capable of performing is supported by substantial evidence.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 2/14/14

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

REBECCA M. MONTANO,                    Case No. 1:13-cv-70
      Plaintiff,                          Spiegel, J.
                                      Litkovitz, M.J.

     vs

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).