UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

REBECCA M. MONTANO,          :
                            :   No. 1:13-cv-00070
      Plaintiff,             :
                            :
                            :
   v.                        :   **OPINION AND ORDER**
                            :
                            :
COMMISSIONER OF SOCIAL       :
SECURITY,                    :
                            :
      Defendant.             :

This matter is before the Court on the Report and Recommendation of Magistrate Judge Karen L. Litkovitz (doc. 18), to which Plaintiff has objected (doc. 19). For the reasons that follow, we accept the recommendation of the Magistrate Judge.

The procedural and factual backgrounds of this case are well-detailed in the Magistrate Judge's Report and Recommendation, and the Court will not reiterate them here. In brief, however, Plaintiff applied for disability insurance benefits ("DIB"), alleging a disability onset date of February 28, 2007. In a decision dated September 19, 2011, the Administrative Law Judge ("ALJ") determined that Plaintiff had the severe impairments of status post labral tear, left shoulder, with surgical intervention; cervical spondylosis with chronic pain symptoms; mild degenerative disc disease of the

1

lumbar spine; and an anxiety disorder (Tr. 32). However, the ALJ also determined that none of these impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 and that Plaintiff had the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently; to sit, with normal breaks, for a total of 6 of 8 hours per day; to stand and walk, with normal breaks, for a total of 6 of 8 hours per day; and to push and pull within those limitations. Moreover, Plaintiff could not work overhead with the left upper extremity or do any repetitive pushing or pulling with the left upper extremity. She could occasionally climb ramps and stairs, but could never climb ladders, ropes or scaffolds. She could occasionally stoop, kneel, crouch or crawl. Finally, Plaintiff was limited to simple, routine tasks. (Tr. 33-35.) A vocational expert ("VE") testified that, although she was not capable of performing her past relevant work, a person with Plaintiff's profile and RFC nonetheless would be able to perform "jobs that existed in significant numbers in the national economy" (Tr. 41-42). Therefore, the ALJ determined that Plaintiff was not disabled and thus not entitled to DIB (Tr. 42).

Plaintiff eventually sought review from this Court and argued that the ALJ erred when: (1) he relied on the VE's

2

testimony that was inconsistent with the Dictionary of Occupational Titles ("DOT"); (2) he gave "great weight" to the opinions of the State agency reviewing physicians Maria Congbalay, M.D. and Leigh Thomas, M.D.; (3) he rejected the opinion of her treating physician, Ron Zile, M.D.; (4) he failed to give greater weight to the opinion of her treating chiropractor, Jeffrey Todd Reed, D.C.; (5) he mischaracterized or ignored evidence that established significant changes to her physical condition in 2010; (6) he improperly assessed her credibility by not considering her efforts at pain relief; and (7) he improperly discounted her credibility based on purported inconsistencies involving her activities of daily living. (See doc. 9 at 2-12.) The Magistrate Judge has determined that the ALJ did not err in weighing the opinion evidence of record (errors two, three and four), did not mischaracterize the record regarding Plaintiff's physical condition in 2010 (error five) and did not err at Step Five of the sequential analysis (error one). Moreover, the Magistrate Judge has found that substantial evidence supported the ALJ's credibility determination (errors six and seven). We recount below the specifics that underpin the Magistrate Judge's Report and Recommendation.

## A. Opinion Evidence

The Magistrate Judge considered first whether the ALJ erred in his evaluation of the opinion evidence of record,

3

specifically the weight accorded to the opinions of Drs. Zile, Reed, and Congbalay and Thomas.

**(1) Plaintiff's Treating Physician, Dr. Zile**

Plaintiff argued that the ALJ improperly characterized the August 6, 2009 opinion of Dr. Zile as one from an Ohio Job and Family Services doctor rather than as one of a treating physician. Additionally, Plaintiff contended that the ALJ failed to follow the "treating physician rule" in assessing Dr. Zile's opinion and by not recontacting him as required by the regulations.[1] The Magistrate Judge agrees that the ALJ misstated the source of the August 2009 opinion and failed to recognize Plaintiff's treating physician as its author; nonetheless, she

---

[1] At the time Plaintiff's claim for benefits was administratively adjudicated, the applicable regulation was found at 20 C.F.R. § 404.1512(e). The language read in pertinent part as follows:

**Evidence.**

. . . .

(e) Recontacting medical sources. <u>When the evidence we receive</u> <u>from your</u> <u>treating physician</u> or psychologist or other medical source <u>is inadequate</u> for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

    (1) <u>We will first recontact your treating physician</u> . . . .

. . . .

(emphasis added). Section 404.1512 was amended effective March 26, 2012, and that provision of the regulations now is found at 20 C.F.R. § 404.1520b(c)(1).

concludes that any error was harmless. Dr. Zile opined that Plaintiff was "extremely limited" in her ability to push/pull, bend or reach; could only stand/walk or sit for less than 1 hour in an 8-hour workday; and could not lift/carry any objects, regardless of their weight (Tr. 481-82). The ALJ gave "very little weight" to the August 2009 opinion because it was "'mostly' based on [Plaintiff's] own statements" (Tr. 40, citing Tr. 481-82). Examining the form in question, the Magistrate Judge notes that, in the portion that asks the author, "What "observations and/or medical evidence led to your findings[]?" Dr. Zile wrote, "Mostly Hx from Pt and info on chart[]" (Tr. 482). Because he represented that his opinion was based primarily on Plaintiff's "subjective reports," the ALJ was not required to give it further weight, citing 20 C.F.R. §§ 404.1508[2], 404.1528[3] and <u>Buxton v. Halter</u>, 246 F.3d 762, 773 (6th

---

[2] 20 C.F.R. § 404.1508 reads in pertinent part:

**What is needed to show an impairment.**

. . . . A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, <u>not only by your statement of symptoms</u> . . . .

(emphasis added).

[3] 20 C.F.R. § 404.1528 reads in pertinent part:

 **Symptoms, signs, and laboratory findings.**

(a) Symptoms are your own description of your physical or mental impairment. <u>Your statements alone are not enough to establish that there is a physical or mental impairment</u>.

Cir. 2001) (ALJ not bound by "conclusory" statements of treating physician that are "unsupported by detailed objective criteria and documentation" (internal citations and quotations omitted)). (See doc. 18 at 10-11.) The Magistrate Judge also reports that substantial evidence supports the ALJ's determination that Dr. Zile's limitations were inconsistent with the record as a whole. For instance, Dr. Zile opined that Plaintiff could lift/carry no weight whatsoever, yet, in contrast, Plaintiff testified at the hearing that she could "lift and carry" objects "Probably 10-, up to 20-pounds at the most" (Tr. 95-96). Further, Dr. Zile's other radical limitations were contradicted by physical examination findings of full muscle strength (see, e.g., Tr. 335, 337, 359, 427, 429, 717); good range of motion in her neck, back and left shoulder (see, e.g., Tr. 266-270, 478, 693, 694, 702, 719); and a normal gait (see, e.g., Tr. 671, 859). (Doc. 18 at 11.) And because the ALJ assigned "very little weight" to the opinions of Dr. Zile based on his determination that they were in conflict with the record as a whole, the Magistrate Judge concludes that the duty to recontact did not apply. The wording of the regulation makes clear that that obligation is triggered only when the ALJ cannot make a disability

---

(b) Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. . . .

(emphasis added).

6

determination based on the <u>inadequacy</u> of the evidence provided by the treating physician (<u>see</u> n.1, <u>supra</u>), not an <u>inconsistency</u>.  <u>See</u> <u>DeBoard v. Comm'r of Soc. Sec.</u>, 211 F. App'x 411, 416 (6th Cir. 2006) ("A disagreement between two medical professionals does not render the opinion of one 'inadequate' under the regulations."); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he requirement for additional information is triggered only when the evidence from the treating medical source is <u>inadequate</u> to make a determination as to the claimant's disability. <u>The ALJ did not make a finding that the report was inadequate</u> to make a determination regarding Ms. Thomas' disability. <u>Instead, the ALJ disagreed</u> with the report's finding . . . ." (emphasis added)).  (Doc. 18 at 11-12.)

**(2)  Plaintiff's Treating Chiropractor, Dr. Reed**

Plaintiff argued that the ALJ erred in giving "very little weight" to the opinions of Dr. Reed inasmuch as they were consistent with the opinions of Dr. Zile.  On September 28, 2010, Dr. Reed opined that Plaintiff could stand/walk or sit for only about 2 hours in an 8-hour workday; could stand for only 20 minutes at a time and sit for only 30 minutes at a time; would need 5-minute periods of walking around every 20 minutes during an 8-hour workday; and could lift/carry objects weighing less than 10 pounds frequently, 10 pounds occasionally and 20 pounds rarely.  His treatment relationship with Plaintiff began in

April 2007, continuing through the date of his report, and he recorded his diagnoses as radiculitis, cervical sprain/strain and thoracic outlet syndrome. (Tr. 711-14.) The Magistrate Judge notes that, under the regulations, the ALJ was not required to give any special weight to Dr. Reed's opinions because chiropractors are not "acceptable" medical sources qualified to assess the severity of a claimant's impairments and any limitations of functioning. Cf. 20 C.F.R. § 404.1513(a)(1)-(5) with 20 C.F.R. § 404.1513(d)(1) ("[W]e may also use evidence from other sources [for example, chiropractors] to show the severity of your impairment(s) and how it affects your ability to work." (emphasis added)). That Dr. Reed's findings were as radical as Dr. Zile's served as a negative to the ALJ given that he already had discounted the latter's opinions as being in conflict with the record as a whole. In the Magistrate Judge's view, then, the ALJ did not err in failing to exercise his discretion and giving other than "very little weight" to the opinions of Dr. Reed. Walters v. Comm'r of Soc. Sec., 127 F.3d 125, 131 (6th Cir. 1997) ("ALJ was not required to adopt the opinions of a treating chiropractor nor to give them controlling weight." (emphasis added)). (Doc. 18 at 13-14.)

**(3) State Agency Physicians, Drs. Congbalay and Thomas**

Plaintiff argued that the ALJ erred in giving "great weight" to the opinions of Drs. Congbalay and Thomas because

8

both physicians rendered their opinions without reviewing the full record. On January 2, 2010, Dr. Congbalay completed a physical RFC in which she opined that Plaintiff could stand/walk or sit about 6 hours in an 8-hour workday; never climb ladders, ropes or scaffolds but occasionally stoop, crouch and crawl; and lift/carry and push/pull up to 10 pounds frequently and 20 pounds occasionally (Tr. 643-44, 649). Further, she opined that Plaintiff was limited in overhead reaching with her left upper extremity (Tr. 645). She deemed Plaintiff's allegations that she could stand or sit for only one hour at a time and could lift no more than 10 pounds to be just "partially credible" because the medical evidence of record did not support such extreme limitations (Tr. 647). Dr. Congbalay's assessment was affirmed by another State agency physician, Dr. Thomas, on June 2, 2010 (Tr. 704) and again on June 8, 2010 (Tr. 705). The Magistrate Judge notes that their record review was somewhat "limited[,]" but observes that the evidence not reviewed was generated _after_ Plaintiff's insured status expired. Plaintiff filed her application for DIB on July 24, 2009, alleging an onset date of February 28, 2007, with her insured status expiring on September 30, 2009. To qualify for an award of benefits, Plaintiff was required to prove she was disabled during the period of February 28, 2007 to September 30, 2009. The Magistrate Judge reports that post-insured evidence is

appropriately considered only when it "sheds light" on a claimant's condition during her insured period, quoting Paquette v. Sullivan, 902 F.2d 1569, 1990 WL 66814, at *2 (6th Cir. May 21, 1990 (citing Johnson v. Sec'y of Health & Human Servs., 679 F.2d 605 (6th Cir. 1982)). She highlights Plaintiff's failure to explain the relevance of any of the later-generated evidence or cite to any record evidence of any physical limitation not already accommodated in the ALJ's RFC assessment. Moreover, she remarks that Plaintiff failed to cite to any authority that requires an ALJ to give less weight to an otherwise well-supported non-examining medical source opinion in the circumstance where that source does not review evidence after the date last-insured. (See doc. 18 at 15-17.) The Magistrate Judge also determines that the ALJ's decision to give "great weight" to these opinions found substantial support in the record evidence that pre-dated Plaintiff's date last-insured, which she surveys at length. Physical examination findings of full lower-extremity muscle strength, as well as consistent record notations of a normal, steady gait and negative straight-leg raising supported their opinions that Plaintiff retained the functional capacity to stand/walk or sit for about 6 hours in an 8-hour workday; physical examination findings—in addition to Plaintiff's hearing testimony—likewise supported their opinions that Plaintiff could lift 10 pounds frequently and 20 pounds

10

occasionally.  (See doc. 18 at 17-19.)  The Magistrate Judge
acknowledges the objective record evidence establishing an acute
left shoulder impairment, but references physical examination
findings that confirmed that Plaintiff retained a full range of
motion and strength, with her medical providers pleased with the
result of her surgery.  (See doc. 18 at 18.)[4]  Finally, the
Magistrate Judge concludes that the post-insured medical
evidence is "similarly consistent" with the assessment that
Plaintiff has the functional capacity to perform a limited range

---

[4] For context the Court has enhanced the record evidence cited by the
Magistrate Judge: Tr. 478 (Excerpt from September 1, 2009 letter from
orthopaedic surgeon Brian S. Cohen, M.D. to primary care physician Dr. Zile:
"I am very happy with the way her shoulder has progressed in terms of the
motion and the strength."); Tr. 623 (Excerpt of October 15, 2009 Clinic Note
of Jesse McCarron, M.D., Department of Orthopaedics, The Cleveland Clinic
Foundation, to whom Plaintiff self-referred:  "As was discussed with the
patient, I think that her should actually looks quite good to me, given the
story that she is giving me and the long period of time that it took her to
pursue surgery. . . . Based on her description of her preoperative symptoms
as well as intraoperative arthroscopy pictures, it looks like the diagnosis
as well as the surgical repair achieved by Dr. Cohen was excellent and I do
not see anything that could have been improved on.  In short, I think she had
the right surgery done well for the right indications and the persistent
stiffness she has is not surprising and I think will [] continue to improve
with progressive diligence with stretching.  The periscapular snapping is
likely to improve as well as she sees more range of motion at the shoulder
which will translate to decreased stresses across the scapula on the back and
improved overall should kinematics. . . . I believe that her treatment has
been excellent under Dr. Cohen's supervision, and I think that her progress
to date is exactly what I would anticipate, and I think that over[]time she
will see continued restoration and improvement in function in her shoulder
with a good eventual surgical outcome.  She understands this plan.  All of
her questions were answered."); Tr. 695 (Excerpt from October 28, 2009 letter
from physical medicine and rehabilitation specialist Karen C. Evans, M.D. to
Dr. Cohen:  Regarding Plaintiff's complaints of neck tightness and shoulder
pain rated as a 2-3 on a scale of 10, "Her range of motion is actually quite
good in the shoulder."); Tr. 694 (Excerpt from November 25, 2009 letter from
neurosurgery/spine specialist Jeffrey Lobel, M.D. to Dr. Zile:  Regarding
Plaintiff's complaints of neck, shoulder and back pain, upon physical
examination "Neck range of motion is within normal limits. . . . Ambulates
with a normal gait and station.  Her motor strength is 5/5 in the upper and
lower extremities. . . . ").

of light work (doc. 18 at 18-19).[5] For all these reasons, the

Magistrate Judge reports that substantial evidence supports the

_____

[5] For context, the Court has again enhanced the record evidence cited by the Magistrate Judge: Tr. 671-74 (physical therapy notes from April and May 2010 that confirm a normal gait and an increase in Plaintiff's left arm range of motion); Tr. 693 (Excerpt from April 28, 2010 letter from Dr. Evans to Dr. Zile: Regarding Plaintiff's complaints of chronic left-sided cervical and shoulder tightness, "On exam today, she has some mild restriction of external rotation and internal rotation, but otherwise she appears to have painless range of motion of the left shoulder."); Tr. 719 (Excerpt from May 21, 2010 examination note by orthopaedic spine specialist James E. Fleming, Jr., M.D.: "She has good range of motion of her cervical spine. She has satisfactory range of motion of the lumbar spine. Radiographs reveal some mild spondylolitic changes in the cervical spine."); Tr. 717 (Excerpt from August 19, 2010 letter from neurologist Michael E. Jones, D.O. to Dr. Cohen: "Motor examination finds give-way weakness of the left deltoid, left biceps, left triceps. The left grip strength is full power. There is also give-way of the left iliopsoas. Give-way of the left vastus group. The left anterior tibialis muscle strength is normal. Left gastroc strength is normal. Right upper extremity and right lower extremity strength is normal. She has normal bulk and tone of all muscles of the upper extremities. She has, in fact, superior muscle development of both upper extremities and lower extremities. She does, however, have left scapular winging with the arms held in extension in front of her. Again, she has normal bulk and tone of both lower extremities as well."); Tr. 730-31 (Excerpt from June 29, 2010 examination note by Amol Soin, M.D., Chairman and Medical Director of the Ohio Pain Clinic: "Palapation of cervical facets did not elicit an extensive amount of pain. Chin to chest flexion test was normal and flexion was a full 60 degrees without pain. Chin to ceiling extension test was normal and achieved a full 75 degrees without pain. Lateral bending of the neck at 45 degrees did not cause pain. There were some trigger points felt in around the paraspinal cervical muscles. . . . I am not sure I have a lot of options for this patient- other than conservative care. Given the level of anxiety this patient has- I think she will be a good candidate for a trial of [C]ymbalta or [S]avella to treat the neuropathic component of the pain."); Tr. 734 (Excerpt from July 27, 2010 examination note by Dr. Soin: "Close to an hour was spent with the patient discussing several issues. I think she may benefit from multidisciplinary pain treatments like psychological counseling with biofeedback."); and Tr. 738-39 (Excerpt from September 28, 2010 examination note by Dr. Soin: "Winged scapula is noted on physical exam. . . . EMG [of the upper extremity] showed nerve pathology and damage to the long thoracic nerve . . . . She has disuse atrophy of several muscles in the left upper extremity. We can trial a muscle stimulation unit. . . . Otherwise all I can offer is supportive and conservative care . . . ."); Tr. 769-70 (Excerpt from September 30, 2010 Clinic Note by Eric T. Ricchetti, M.D., Department of Orthopaedics, The Cleveland Clinic Foundation, to whom Plaintiff self-referred: "Strength testing of rotator cuff on the left shoulder reveals 5/5 strength throughout[] . . . There is some evidence of scapular winging, but this does seem to correct with resisted maneuvers. . . There is also palpable and audible scapulothoracic crepitus with range of motion of the shoulder and movement of the scapula. . . She does not note any significant pain with this crepitus, however. . . ."); Tr. 847, 848 (Excerpt of May 24, 2011 examination note of William D. Tobler, M.D., Mayfield Clinic:

ALJ's decision to give "great weight" to the opinions of State agency physicians Drs. Congbalay and Thomas.

## B. Plaintiff's Physical Condition in 2010

Plaintiff disputed the ALJ's statement that, in 2010, "the record continues to show that [Plaintiff] did not suffer from any significant changes to her physical condition[]" (Tr. 38). In support, the ALJ referenced, among other medical evidence, the March 5, 2010 letter from neurologist Angela Rackley, M.D. to Dr. Zile in which she mentioned that Plaintiff's recent EMG was "unremarkable" (Tr. 38, citing Tr. 682). The ALJ failed to address, however, an EMG report from August 23, 2010 that revealed left ulnar mononeuopathy at the elbow, severe left C3 and/or C4 radiculopathy and a chronic left long thoracic nerve injury (Tr. 708-09, 715). The Magistrate Judge did not regard this omission as error, noting generally that an ALJ "need not discuss every piece of evidence in the record for his decision to stand." Thacker v. Comm'r of Soc. Sec., 99 F. App'x 661, 665 (6th Cir. 2004). As to specifics, while this EMG study was regarded as "abnormal[,]" it was completely consistent with the description by Dr. Jones of Plaintiff as having "a host of

---

"She has very guarded movement of her neck. She has 5/5 motor with normal active symmetric reflexes. . . . I think she may benefit from other forms of therapy, including chiropractic manipulation or acupuncture or possibly evaluation by a physical medicine doctor, but I do not think there is any surgical treatment for her problem. I have encouraged her to have further shoulder evaluation as she is having issues with her left shoulder. . . ."); and Tr. 859 (Excerpt from July 19, 2011 examination note of Dr. Tobler: "She has 5/5 strength throughout. She walks with a well[-]balance[d], well[-]coordinated gait. . . .").

different mechanical pain-related complaints including neck pain and left shoulder pain" as he stated in his August 23, 2010 letter to Dr. Cohen (Tr. 715). Further, this objective evidence does not undercut the Dr. Jones' examination findings from August 19, 2010, four days earlier, indicating that Plaintiff had some "give-way weakness" in her left arm but full left grip strength (see Tr. 717). Because the ALJ's RFC restricts Plaintiff from working overhead with her left upper extremity or from any repetitive pushing or pulling with the left upper extremity, and because the other medical evidence of record in 2010 confirmed full strength in all extremities, good range of motion in her back, neck and left shoulder, and a normal gait, see n.5 supra, it was not necessary for the ALJ to discuss the August 23rd EMG in order for his decision to stand. (Doc. 18 at 21-22.)

## C. The ALJ's Credibility Assessment of Plaintiff

Plaintiff contended that the ALJ's assessment that she was less than fully credible is erroneous because: (1) he failed to credit her persistent efforts to obtain pain relief; and (2) he improperly determined that her activities of daily living were inconsistent with her subjective reports of pain. The Magistrate Judge correctly recognizes that it is the province of the ALJ, and not this reviewing court, to evaluate the credibility of witnesses, including that of the claimant.

14

Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 247 (6ᵗʰ Cir. 2007).
The ALJ's determination, however, must find support in the
record. Id. "Consistency between a claimant's symptom
complaints and the other evidence of record tends to support
credibility, while inconsistency, although not necessarily
defeating, should have the opposite effect." Id. (Doc. 18 at
22-23.)

    Credibility determinations are properly guided by Social
Security Ruling 96-7p. That portion upon which Plaintiff relies
regarding pain treatment reads in part, "Persistent attempts by
the individual to obtain relief of pain or other symptoms, such
as by increasing medications, trials of a variety of treatment
modalities in an attempt to find one that works or that does not
have side effects, referrals to specialists, or changing
treatment sources may be a strong indication that the symptoms
are a source of distress to the individual and generally lend
support to an individual's allegations of intense and persistent
symptoms." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *7 (July
2, 1996). The Magistrate Judge notes that a "plain reading" of
the ALJ's assessment makes clear that he discussed virtually all
of the treatment evidence proffered by Plaintiff and recognized
a number of methods used by her to relieve her pain (see Tr. 35,
38). But, she reports, the record does not support a finding of
"persistent attempts" in this regard. For example, the ALJ

referred to the December 3, 2008 treatment notes of Dr. Zile, in which he stated, "The patient is obviously very challenging. I want to help her, but if she is not going to take any medication and refuses to take antidepressants, which I think would help her in a number of ways. I think this would help her depression and also help her anxiety associated with this and also help with some of the pain management issues. I think she would benefit from this. Apparently, I am not the first person who has told her this, but she is quite resistant to this idea. . . . There is not one thing at this point to link all of her symptoms to, which is what she is wanting to do. Again, it is further complicated by the fact that she refuses any medications that I could possibly give her. In fact, she insists on not taking any other medications other than the Valium" (Tr. 37, citing Tr. 461). These remarks prompted the ALJ to observe that, "[i]t is unlikely that someone with constant pain symptoms would refuse to take any pain medications" (Tr. 37). The ALJ also discussed the June 29, 2010 treatment notes of Dr. Soin, in which he stated, "I offered her a lot of options and she did not seem interested. She does not want to try medications for neuropathic pain-like [N]eurontin or [L]yrica. She does not want to try TENS unit. She does not want further PT. She does not want epidural injections, trigger point injections, or other techniques from an interventional standpoint" (Tr. 38, citing

16

Tr. 731).  These remarks prompted a similar observation:  "As with her previous refusals for treatment, it is again noted that someone who is experiencing such excruciating pain as alleged by [Plaintiff] would be willing to try almost any treatment to relieve that pain.  Here, the [Plaintiff] refused <u>all</u> of the treatment options offered to her.  Further, it is perplexing that she would refuse suggested treatment when other treatments had proven to be effective at an earlier time" (Tr. 38 (emphasis original)).  The Magistrate Judge finds that the ALJ's thorough discussion of Plaintiff's attempts to treat her pain and her documented refusals of recommended treatment complied with the mandate of S.S.R. 96-7p and adequately underpinned his determination that her allegations of disabling pain and extreme functional limitations were not fully credible.  (Doc. 18 at 23-24.)

Plaintiff's daily activities were also properly considered by the ALJ in assessing her credibility according to the Magistrate Judge.  <u>See</u> <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 532 (6th Cir. 1997); S.S.R. 96-7p, <u>supra</u>, 1996 WL 374186, at *3.  The ALJ excerpted portions from her typical day as Plaintiff described it on January 23, 2010 to consulting examining psychologist, Michael W. Firmin, Ph.D. (Tr. 38, citing Tr. 652-53).  They amounted to a "wide array" in the Magistrate

17

Judge's view and likewise bolstered the ALJ's credibility assessment.[6] (Doc. 18 at 24-25.)

**D. Step Five of the Sequential Analysis**

Plaintiff asserted that the ALJ erred at Step Five of the sequential analysis when he relied on the testimony of the VE, who stated that an individual with an RFC for light, unskilled work and capable of accomplishing only simple, routine tasks could perform the jobs of production assembler, production inspector or hand packer. Plaintiff reasoned that the ALJ's hypothetical question, which described an individual "limited to simple, routine tasks" (see Tr. 104), was tantamount to describing an individual with DOT "level 01" reasoning skills, explained as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." (Dictionary of Occupational Titles, Appendix C., 4th Ed., rev. 1991 (available at http://www.occupationalinfo.org/appendxc_1.html) (last visited Apr. 8, 2014) (emphasis added)). The jobs identified by the VE, however, demand DOT "level 02" reasoning skills, necessitating an ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or

---

[6] Upon our review of the ALJ's opinion, the Court notes that the ALJ was particularly persuaded that an individual claiming Plaintiff's symptom severity would have quite a "difficult" time engaging in yoga on a daily basis (Tr. 38).

oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." (Id. (emphasis added)). Thus, Plaintiff maintained, because the jobs identified by the VE were inconsistent with the DOT's definition of them, the ALJ erred in relying on his testimony and consequently finding that there were jobs existing in the national economy that she could perform.

The Magistrate Judge disagrees that the VE's testimony was inconsistent with the DOT for two reasons. First, unskilled work encompasses both reasoning levels 01 and 02. Soc. Sec. Ruling 00-4p, 2000 WL 1898704, at 3 (Dec. 4, 2000). Second, the reasoning levels listed in the DOT reflect the maximum requirements for the work generally and not a range of specific requirements that an individual must be able to perform. Id. See French v. Astrue, No. 2:08-cv-15, 2009 WL 151525, at *8 (E.D. Ky. Jan. 20, 2009) ("[T]he DOT defaults to the 'highest physical demand level required by the job under a particular description.'"); Hall v. Chater, 109 F.3d 1255, 1259 (5th Cir. 1997) ("[N]ot all the jobs in every category have requirements identical to or as rigorous as those listed in the DOT."). Therefore, the ALJ could reasonably rely on the VE's testimony. (Doc. 18 at 27.) Even if the Magistrate Judge had perceived an inconsistency, though, she concludes that the ALJ met his burden as set forth in S.S.R. 00-4p. Once an ALJ questions the VE as

19

to whether there is an "apparent unresolved conflict" between his testimony and the DOT, and once he testifies that there is not, the ALJ is under no further obligation to interrogate the VE, particularly when Plaintiff is given an opportunity to cross-examine the VE. Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 606 (6th Cir. 2009). Here, the ALJ asked the VE if his testimony was consistent with the DOT (Tr. 106); he replied that it was (Tr. 106), and Plaintiff's counsel did not question the VE about any inconsistency (Tr. 106-07) and did not bring up this issue to the ALJ post-hearing. For this reason also, then, the Magistrate Judge finds that the ALJ did not err at Step Five. (Doc. 18 at 27-28.)

Finally, Plaintiff insisted that the ALJ erred by relying on the DOT rather than a more updated publication such as the Occupational Information Network ("O*NET"), citing Cunningham v. Astrue, 360 F. App'x 606, 615-16 (6th Cir. 2010). Cunningham, however, was directed at two very specific job descriptions—in particular "document preparer" and "security camera monitor"—and it did not hold outright that "the DOT is an unreliable or out-of-date source." Horsley v. Comm'r of Soc. Sec., No. 1:11-cv-703, 2013 WL 980315, at *3 (S.D. Ohio Mar. 13, 2013) (Barrett, J.) (quoting Earls v. Comm'r of Soc. Sec., 1:09-cv-01465, 2011 WL 3652435, at *7 (N.D. Ohio Aug. 19, 2011)). Thus, the Magistrate Judge finds no error at Step Five.

20

Plaintiff objects to the Magistrate Judge's Report and Recommendation, not addressing the specifics within but instead largely reiterating the arguments set forth in her Statement of Errors (see doc. 19).  For example, as to the ALJ's disputed credibility assessment, Plaintiff tenders no response with regard to the Magistrate Judge's conclusions about her treatment refusal or why her "wide array" of activities (including her twice daily yoga routine) does not undercut the contention that she is completely unable to work.  Nor, for instance, does she address the Sixth Circuit case law cited by the Magistrate Judge interpreting S.S.R. 00-4p regarding the ALJ's putative error at Step Five of the sequential analysis.[7]  Her pleading reads in the nature of a general objection to the entirety of the Magistrate Judge's report, and we question whether it might properly be regarded as a failure to object such that de novo review is not warranted.  See Dorr v. AT&T Communications of Michigan, Inc., No. 12-cv-10393, 2012 WL 694645, at *1 (E.D. Mich. Mar. 5, 2012)

---

[7] Although neither the Magistrate Judge nor Plaintiff has cited to it, the Court is mindful of its previous ruling in Bunger-Stanley v. Comm'r of Soc. Sec., 2011 WL 4501977, *5 (S.D. Ohio Sept. 28, 2011) (Spiegel, S.J.) in which we ordered that, upon remand, the ALJ was to use the updated O*NET job listings in accord with Cunningham.  This case, however, differs from Bunger-Stanley in two significant respects.  We did not order a remand under Sentence Four on the basis that the ALJ used the DOT rather than the O*NET at Step Five of the sequential analysis.  Rather, we remanded on the basis that the ALJ failed to give the requisite "good reasons" for discounting the opinion of Plaintiff's treating physician.  Id. at *4.  Here, we agree with the Magistrate Judge that the ALJ's decision to discount the opinions of Dr. Zile is supported by substantial evidence and thus remand is not indicated. Second, one of the jobs identified by the VE in Bunger-Stanley was one of the two (specifically, "security camera monitor") at issue in Cunningham.  See id. (Plaintiff's Objections to Report and Recommendation of Magistrate Judge, doc. 10 at 8 (citing Tr. 283)).  Here, there is no such coincidence.

(citing Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 509 (6th Cir. 1991)).   Nonetheless, pursuant to 29 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), we have considered de novo all the relevant filings in this matter in rendering our decision, both out of an abundance of caution and in the interests of justice.   Upon review, we conclude that the Magistrate Judge's Report and Recommendation is thorough, well-reasoned and correct, and accordingly, the Court ACCEPTS, ADOPTS and AFFIRMS it in all respects.   Plaintiff's objections are thus OVERRULED and the decision of the Commissioner to deny Plaintiff's application for disability insurance benefits, which we find to be supported by substantial evidence, is AFFIRMED. Finally, the Court ORDERS that this case be closed on the docket.

     SO ORDERED.

Dated:  April 10, 2014     s/S. Arthur Spiegel_____
                      S. Arthur Spiegel
                      United States Senior District Judge